DUNCAN. ELLSWORTH

*v.*

HAMILTON ELLSWORTH *et al.*

*Filed at Springfield March 26, 1892.*

1. ESTOPPEL—*to assert legal title in lands—extension to heirs.* Where a father expressly recognizes one of his sons as the equitable owner of a tract of land, the legal title being in the former, and by his advice another son purchases the land of his brother, paying the full value thereof, the father will thereafter be estopped from denying that the son so purchasing obtained the equitable title to the land, and such. estoppel extends to the heirs of the father.

2. Where a person by his advice and direction causes another to purchase land of one claiming title thereto, at its full value, he will be estopped from asserting the legal title resting in his name, as against such purchaser.

APPEAL from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. CHARLES M. PEIRCE, for the appellant.

Messrs. KERRICK, LUCAS & SPENCER, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This appeal is from a decree on a bill for partition and to correct a mistake in a conveyance of real estate. Elijah Ellsworth, the father of the parties to the present litigation, died intestate on the 12th of May, 1890, seized in fee of certain lands described in the bill, and leaving surviving him, as his heirs-at-law, his three sons, Walker, Hamilton and Duncan. Before his death,—on the 4th of November, 1889,—Hamilton sold to Walker, for $1600, as Walker and Duncan claim, all of his then contingent interest in their father's lands, but, as Hamilton claims, only all of his interest in a certain forty-acre tract whereof Hamilton claimed to be the equitable owner, the legal title to which was in their father. Hamilton conveyed

his interest in that tract to Walker by quitclaim deed of that date, but it is contended on behalf of both Walker and Duncan that there is a mistake in the description therein, in that it should include Hamilton's interest in all the lands whereof their father was then seized, instead of his interest in the forty therein described, and that such mistake should have been corrected by the decree below, and that Hamilton should also have been thereby denied to have any interest in the other lands whereof their father died seized. It is also contended on behalf of Duncan, that Hamilton's interest in the tract described in the quitclaim deed was only as tenant in common with himself and Walker, as heirs-at-law of their father; and that, consequently, Walker takes by that deed only Hamilton's undivided third interest in the tract. The court below decreed that there was no mistake in the quitclaim deed of Hamilton to Walker, and that it vested Walker with the equitable title to the tract described; that Hamilton is seized in fee, as tenant in common with Walker and Duncan, of an undivided third in the other lands whereof their father died seized, and that partition be made accordingly.

The proof seems to establish that at the time Hamilton sold and conveyed to Walker, he and Walker thought Hamilton's interest in his father's lands extended only to the forty-acre tract which was the subject of that sale and conveyance,— and this was literally true, for it is not pretended that their father could not thereafter, by conveyance or will, dispose of his other lands without regard to Hamilton, or, for that matter, Walker or Duncan; and it may be that it was then assumed by them that he would, upon the death of their father, have no interest in his other lands. But the preponderance of the evidence is quite clear that Hamilton did not assume to sell and convey, nor Walker to buy, any interest, contingent or otherwise, in the other lands of which their father was then, or expected to be thereafter, seized. The preponderance of the evidence is, that the negotiations between Walker and

Hamilton related only to this forty-acre tract, and that it alone was intended to be conveyed. The deed was read and fully explained to Walker before it was executed, and when it was delivered to him he knew it was for the tract it described, only, and he made no objection that it was inaccurate, but received it as conveying that which he had purchased.

The claim was made by Hamilton, during the lifetime of his father, that he had furnished his father with $300 of the money with which his father paid for this land when he purchased it, and that in consequence he had an interest in the land—that it was his—and that his father recognized this claim. This was known to both Walker and Duncan. It is not material whether the evidence is sufficient to establish a resulting trust in favor of Hamilton. It is sufficient that Hamilton claimed the land, that his claim was recognized by his father, and that the proof is uncontradicted that Walker bought the land of Hamilton, paying full value therefor in money, not only with the knowledge but under the express advice and direction of their father. Their father told Walker to buy the land of Hamilton, and to pay him therefor what he did pay, and this estopped him thereafter to deny that Walker thereby purchased and obtained the equitable title to the land. (7 Am. and Eng. Ency. of Law, 18, and cases cited.) Duncan is not a purchaser for value, of any interest in this tract. The only interest he claims therein is as one of the heirs-at-law of his father. He can therefore take only what his father could take were he now attempting to assert title against Walker, and his father being estopped, he is estopped from denying Walker's equitable title. *Wood* v. *Lesley,* 32 N. Y. 105; *U. D. S. Inst.* v. *Wilmot,* 94 id. 221; 46 Am. R. 137; Bigelow on Estoppel, 484; 7 Am. and Eng. Ency. of Law, 23, and cases cited in note 1.

The decree is affirmed.

*Decree affirmed.*